UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
CONFIRMIT INC. n/k/a FORSTA
INC.,

        Plaintiff,

    - against –

AND AGENCY, INC.,

        Defendant.

------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 4319 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In this breach of contract action, plaintiff Confirmit Inc. ("Confirmit") contends that defendant AND Agency, Inc. ("Agency") breached a Software as a Service ("SaaS") Agreement (the "Agreement") by ineffectively attempting to terminate the Agreement and subsequently failing to remit payments due under its terms. Both parties now cross move for summary judgment. Confirmit seeks a ruling granting a money judgment in its favor based on defendant's alleged breach of contract. Agency seeks a ruling dismissing the complaint. For the reasons stated below, we deny Confirmit's motion in its entirety and grant in part and deny in part Agency's motion.

**BACKGROUND**[1]

---

[1] The following facts are drawn primarily from the parties' Rule 56.1 Statements and the documents submitted along with each party's briefing. Both parties submitted a Rule 56.1 Statement of Material Facts in support of their motions for summary judgment. See Pl. Local Rule 56.1 Statement ("Pl. 56.1"),

I.    **Factual Background**

Confirmit is a Delaware corporation with a principal place of business in New York, which "provides, among other things, multitenant web-based data collection and reporting services and certain other services and products related thereto."  Amended Complaint ("Am. Compl.") ¶ 6.  Agency is a Canadian corporation, with a principal place of business in Toronto, "that offers customer experience professional services, including market research data visualization, to clients across various industries." Def.'s 56.1 ¶ 4; Am. Compl. ¶ 2.

On December 21, 2017, Confirmit entered into the Agreement with Greenwich Associates ULC ("Greenwich"), Agency's contractual predecessor. Def.'s 56.1 ¶ 1.  Under the terms of the Agreement, Confirmit granted Greenwich a license to use "proprietary Horizons software for data collection and reporting purposes."  Id. ¶ 2. Section 19.1 of the Agreement also provides that:

> Neither party may assign any rights or delegate any
> obligations under this Agreement without the prior
> written consent of the other Party, which shall not be
> unreasonably withheld or delayed.  Notwithstanding the
> foregoing, either Party may assign this agreement
> without the other's consent to (a) an affiliate; or (b)

---

ECF No. 29-20; Def. Local Rule 56.1 Statement ("Def. 56.1"), ECF No. 33-7.  Both parties also submitted responses to each other's 56.1 Statements.  See Def. Response to Pl. Local Rule 56.1 Statement, ECF No. 33-10; Pl. Response to Def. Local 56.1 Statement, ECF No. 36-2.  Where the Court relies on facts drawn from any of the 56.1 Statements, it has done so because the record evidence supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

> to any person, firm, organization, corporation, or other entity which succeeds to the business of either Party by acquisition, merger, reorganization, or otherwise; upon prior written notice and provided such successor entity: i) is not a direct competitor of the non-assigning Party; ii) has the financial viability to perform the respective obligations under this Agreement; and (iii) agrees in writing to be bound by, and subject to, this Agreement.

Declaration of Patricia Vitiello ("Vitiello Decl."), Ex. 1 at 8 (ECF No. 29-8).  The Agreement further states at Section 19.3 that "[a]ny assignment or attempted assignment contrary to the terms of [Section 19.1] will be a material breach of this Agreement and shall be null and void.  This Agreement will be binding upon the successors, legal representatives and permitted assigns of the Parties."  Id.  The Agreement also provides at Section 17.1 that:

> Each Party shall have the right without prejudice to its other rights or remedies and without being liable to the other Party for any loss or damage which may be occasioned to terminate this Agreement immediately by written notice to the other if the other is in material or persistent breach of this Agreement and either that breach is incapable of remedy or such other Party shall have failed to remedy that breach within fifteen (15) days after receiving written notice requiring it to do so.

Id. at 7.

Along with the Agreement, Confirmit and Greenwich signed an order form that established that Greenwich would pay quarterly installments for access to Confirmit's products for the years 2018-2020.  See Vitiello Decl. Ex. 2 at 2.  Under the terms of the order

-3-

form, failure to make payment on the agreed upon dates was considered to be a material breach.  Id.  In addition to the platform fees, Confirmit allocated 250,000 SaaS units for use by Greenwich.  Id.

On January 29, 2018, Greenwich assigned the Agreement to Agency, to which Confirmit expressed no objection.  Am. Compl. ¶ 4.  On December 27, 2019, Confirmit sent invoices to Agency for the quarterly platform fees, to be paid in each quarter of 2020. See Declaration of Joshua D. Sussman in Support of Confirmit's Motion for Summary Judgment ("Sussman Decl.") Ex. 5; Vitiello Decl. Exs. 4,5.  On February 19, 2020, Confirmit issued a press release announcing a merger with Dapresy North America Inc. ("Dapresy"), a "data visualization reporting firm."  Declaration of Jason J. Oliveri Ex. 2 at 6.

In response to the press release, Agency employees, including Johann Ho, Agency's Chief Financial Officer, discussed whether the announced merger constituted a material breach of the Agreement. See Sussman Decl. Ex. 2.  On March 5, 2020, Confirmit wrote to Agency regarding delinquent payment for 2019 invoices separate from the quarterly payments.  See Sussman Decl. Ex. 4.  Confirmit continued to request payment on the 2019 invoices throughout March and April.  Id.  At the same time, Agency was internally discussing

-4-

plans to find a replacement services provider for Confirmit and to terminate the Agreement.  <u>See</u> Sussman Decl. Exs. 4,5.  During the course of these discussions, Agency developed a plan to minimize costs paid to Confirmit to the extent possible.  <u>Id.</u>  Agency ultimately decided to pay platforming fees for the first two quarters of 2020, as it planned to use Confirmit's services during that time period.  <u>Id.</u>  On May 8, 2020, Agency requested that Confirmit remove all access to Agency users on the Confirmit platform.  <u>See</u> Vitiello Decl. Ex. 11 at 4.

On June 30, 2020, Agency sent Confirmit a letter stating that the proposed merger with Dapresy constituted a "material breach" because Dapresy was "a direct competitor" to Agency, and Agency would be terminating the Agreement.  <u>See</u> Am. Compl. ¶ 12.  On July 9, 2020, Confirmit responded to Agency, denying that it had assigned the Agreement.  <u>Id.</u> ¶ 13.  On July 24, 2020, Agency sent another letter to Confirmit, reaffirming its initial letter and confirming termination of the Agreement.  <u>Id.</u> ¶ 14.  On August 7, 2020, Confirmit informed Agency that, per Agency's prior request, Confirmit had removed access to its platform for Agency users. <u>See</u> Vitiello Decl. Ex. 11 at 1.  On August 18, 2020, Confirmit sent a letter to Agency, stating that Agency was in material breach of the Agreement for failure to pay quarterly platform fees for

the third quarter of 2020.  <u>See</u> Vitiello Decl. Ex. 12.  On November
1, 2020, the Confirmit-Dapresy merger occurred.  <u>See</u> Plaintiff's
Statement of Undisputed Facts ¶ 14.

## II.  Procedural Posture

On May 13, 2021, Confirmit commenced this action by filing
the initial complaint.  <u>See</u> ECF No. 1.  After Agency filed an
answer, Confirmit amended its complaint on June 11, 2021.  <u>See</u> ECF
No. 13.  After completing discovery, Confirmit and Agency filed
pre-motion letters seeking leave to file motions for summary
judgment with the Court on October 1, 2021 and October 14, 2021,
respectively.  <u>See</u> ECF Nos. 24, 27.  On October 18, 2021, the Court
issued an order notifying the parties that a pre-motion conference
was unnecessary and directing the parties to file their motions
following a four-brief schedule.  <u>See</u> ECF No. 28.  On October 29,
2021, Confirmit filed its motion for summary judgment.  <u>See</u> ECF
No. 29.  On November 19, 2021, Agency filed its cross motion for
summary judgment and opposition to Confirmit's motion for summary
judgment.  <u>See</u> ECF No. 33.  The motions were fully briefed on
January 5, 2022.  <u>See</u> ECF No. 41.

## STANDARD OF REVIEW

Summary judgment is properly granted where "there is no
genuine dispute as to any material fact and the movant is entitled

-6-

to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," as well as the basis for any absence of material fact in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Courts must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." Gilman v. Marsh & McLennan Cos., Inc., 826 F.3d 69, 73 (2d Cir. 2016).

## DISCUSSION

In order to resolve the cross-motions for summary judgment, the Court must resolve the following three issues: (1) whether the Confirmit-Dapresy merger constituted an assignment of rights to a successor entity under the terms of the Agreement; (2) whether Dapresy was a direct competitor of Agency; and (3) whether Agency waived any right to terminate the Agreement. We address each issue in turn.

### I.   Confirmit Assigned its Rights to a Successor Entity

Under the terms of the Agreement, both parties are prevented from assigning their rights to an "entity which succeeds to the business of either Party by acquisition, merger, reorganization, or otherwise" where the successor entity is a direct competitor of the non-assigning party. <u>See</u> Vitiello Decl. Ex. 1 at 8. Confirmit argues that its merger with Dapresy cannot constitute an assignment to a successor entity because Confirmit survived the merger and the resulting entity retained Confirmit's name.[2]   We disagree. Confirmit's argument is contrary to New York law and to the parties' intent when they drafted the Agreement.

First, under New York Business Corporation Law, following a merger, the surviving or consolidated corporation shall "possess all the rights, privileges, immunities, powers and purposes of each of the constituent corporations."   N.Y. Bus. Corp. Law § 906(b)(2).   When one business entity merges or consolidates with another, "the joining together of the two corporations . . . [creates] a totally new corporation [] and the two others cease to exist."   <u>Ladjevardian v. Laidlaw-Coggeshall, Inc.</u>, 431 F. Supp. 834, 839 (S.D.N.Y. 1977).   "The fact that the companies might have

---

[2] Confirmit incorrectly relies on Delaware's merger statute in support of its argument.   <u>See</u> Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgment and in Further Support of Plaintiff's Motion for Summary Judgment at 3.   As Agency notes in its papers, the Agreement is governed by New York law.   <u>See</u> Memorandum of Law in Further Support of Defendant's Cross-Motion for Summmary Judgment at 3; Vitiello Decl. Ex. 1 at 8.

described their agreement as a 'merger' or 'consolidation' is not controlling." Id.  The Second Circuit has further stated in dicta that "a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation." U.S. Bank Nat'l Assoc. v. Bank of Am. N.A., 916 F.3d 143, 156 (2d Cir. 2019)(dicta).[3]  Given that the February 19, 2020 press release announced a "merger" between Confirmit and Dapresy, the resulting corporation, which retained the name Confirmit at the time, "succeed[ed] to the business of Confirmit" under the terms of the Agreement.[4]  Vitiello Decl. Ex. 1.

Second, regardless of the means by which assignment to a successor entity took place, or the formality of assignment, it is clear from the language of the Agreement that the parties intended for notice to be provided before any major corporate reorganization or merger and for each side to be protected from contracting with a direct competitor.  See Vitiello Decl. Ex 1 at 8.  "The

---

[3] To the extent that Confirmit relies on Delaware law, there is no substantive difference.  See Del. Code Ann. Tit. 6, § 18-209(g) (Following a merger, "each of the domestic limited liability companies and other business entities that have merged or consolidated . . . shall be vested in the surviving or resulting domestic limited liability company or other business entity.").

[4] Confirmit bases part of its argument on the fact that the successor entity retained Confirmit's name.  See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 10; Vitiello Decl. Exs. 8,9.  However, as Confirmit has informed the Court, it has subsequently changed its name to Forsta, Inc. and describes itself as "[f]ormed in 2021 via the merger of industry leaders Confirmit, FocusVision and Dapresy."  Declaration of Ashley Newman Ex. A (ECF No. 41-2); ECF No. 40.

-9-

fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent, and the best evidence of what parties to a written agreement intend is what they say in their writing." Harmony Rockaway, LLC v. Gelwan, 200 A.D.3d 863, 864 (N.Y. App. Div. 2021) (internal quotation marks and citation omitted).  Given that both parties agree that the Agreement is unambiguous, we can reasonably read the language of the Agreement as intending to prevent either of the contracting parties from becoming a direct competitor of the other party.

Therefore, we find in Agency's favor on the issue of whether Confirmit assigned the Agreement to a successor entity.

## II.  The Parties' Remaining Two Issues

Having resolved the first issue, we now turn to the second and third issues raised in the parties' cross-motions: whether Dapresy is a direct competitor to Agency, and whether Agency waived its right to terminate the Agreement.

### a. *Dapresy's Status as a Direct Competitor to Agency is a Material Fact in Dispute*

The parties dispute whether Dapresy is a direct competitor of Agency.  Both sides provide evidence regarding the services provided by Dapresy, as well as similarities and differences between Agency and Dapresy's customer bases, to support their respective arguments.  See Am. Compl. 6; Def.'s 56.1 ¶ 4.  The

record as it currently stands is insufficient to reach a determination on this issue. Accordingly, we find that the question of Dapresy's status as a direct competitor of Agency presents a disputed issue of material fact. Thus, we deny summary judgment to both parties on this issue.

   *b. Election of Remedies*

   Even assuming <u>arguendo</u> that a material breach occurred, plaintiff has raised the issue of whether Agency waived its right to terminate the Agreement by waiting four and a half months to send a termination letter to Confirmit after learning of the material breach on February 19, 2020. Confirmit argues that Agency waived its right to terminate by continuing to accept the benefits of the Agreement and making payments following the alleged breach. <u>See</u> Confirmit Opp'n at 6. Agency takes the position that under the doctrine of election of remedies it waited a "reasonable time" following the alleged material breach before reaching a determination and notifying Confirmit of its decision to terminate the Agreement. <u>See</u> Memorandum of Law in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("AND Mot.") at 8.

   Under New York law, "[w]here a contract is broken in the course of performance, the injured party has a choice presented to

him of continuing the contract or of refusing to go on." Apex
Pool Equip. Corp. v. Lee, 419 F.2d 556, 562 (2d Cir. 1969). "Once
a party elects to continue the contract, he can never thereafter
elect to terminate the contract based on that [particular] breach."
Bigda v. Fischbach Corp., 898 F. Supp. 1004, 1011 (S.D.N.Y. 1995).
However, a party is not required to act immediately when there is
a material breach, and instead may "wait a 'reasonable time' after
learning of the alleged breaches before terminating the contract."
Id. at 1012.  Courts have not defined a set period of time as
"reasonable," and instead look to "the nature of the performance
to be rendered under the contract" and "whether the non-breaching
party has taken an action (or failed to take an action) that
indicated to the breaching party that it made an election." ESPN,
Inc. v. Off. of Com'r of Baseball, 76 F. Supp. 2d 383, 393-94
(S.D.N.Y. 1999) (quoting Bigda, 898 F. Supp. at 1012-13).

Agency's delay in notifying Confirmit of its decision to
terminate the contract was reasonable because the centrality of
the Confirmit contract was integral to its business model and as
such counseled against precipitous action.  Further, Agency took
actions prior to sending its termination letter that "indicated to
[Confirmit] that it made an election." ESPN, Inc., 76 F. Supp. 2d
at 394.

-12-

According to Agency, the material breach occurred on February 19, 2020, when the press release was issued announcing the Confirmit-Dapresy merger. AND Mot. at 9.[5] After this announcement, members of Agency's team internally discussed the possibility that the merger constituted a material breach. See Sussman Decl. Ex. 3. Throughout April 2020, Agency employees discussed their intention to terminate the Agreement at a future point in time, once a suitable replacement was found for Confirmit. On April 7, 2020, in response to notification from Confirmit regarding past due payments on multiple invoices, necessitating payment from Agency in order to prevent a material breach, Adam Kameniak, Agency's CEO, internally wrote to Greg Hart and Johann Ho, Agency's CTO and CFO, respectively, that Agency "[did not] have a choice but to pay [Confirmit]" because Agency "[was] not ready to dump [Confirmit] yet [and thus had] no leverage." Sussman Decl. Ex. 4 at 1. On April 22, 2020, Ho confirmed with Hart and Kamieniak the plan to fully pay the fourth installment of unit fees, to "stretch out [the] payment" of second quarter platform fees, which covered services through June, "until mid May 2020 if

---

[5] While Confirmit argues that there could not have been a material breach prior to the date of the merger in November 2020, Section 19.3 of the Agreement states that an "attempted" assignment of rights to a direct competitor is also considered a material breach. See Vitiello Decl. Ex. 1 at 8.

possible," and to avoid payment of remaining platform fees following the issuance of a termination letter that would "go out by the end of June." Sussman Decl. Ex. 5 at 1.

As a result of these discussions, Agency remitted payments for services and products that it had already used or would use prior to termination. Id. Moreover, on May 8, 2020, Agency signaled its intention to exit the relationship with Confirmit by directing Confirmit to remove all Agency user access from Confirmit's platform. See Sussman Decl. Ex. 4. Thus, Agency clearly indicated to Confirmit that it was not continuing to "accept the benefits of [Confirmit's] performance under the contract." Bigda, 898 F. Supp. at 1013. Taking into consideration all of the circumstances just discussed, we find that Agency did not waive any right it may have had to terminate the Agreement. Whether Agency's decision to terminate was ultimately justified turns on the ultimate resolution of the issue of whether Dapresy was a direct competitor. Therefore, Confirmit's request for summary judgment is denied.

## CONCLUSION

Accordingly, for the reasons stated above, we deny the motions for summary judgment filed by each party. The Clerk of the Court is respectfully directed to close the motions pending at ECF Nos.

29 and 33.

        **SO ORDERED.**

Dated:     New York, New York
           September 9, 2022

                                           NAOMI REICE BUCHWALD
                           UNITED STATES DISTRICT JUDGE

-15-